IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRIS LOVE and<br>RWE FARMS, LLC, | )<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION NO. 1:20-cv-365-ALB-JTA |
| v. | )<br>) CLASS ACTION |
| UNITED STATES DEPARTMENT<br>OF AGRICULTURE, | ) Demand for Jury Trial<br>)<br>) |
| SONNY PERDUE, in his official<br>capacity as Secretary of the United<br>States Department of Agriculture, and | )<br>)<br>) |
| RICHARD FORDYCE, in his official<br>capacity as Administrator of the Farm<br>Service Agency, | )<br>)<br>) |
| Defendants. | )<br>) |

## CLASS ACTION COMPLAINT

Plaintiffs Chris Love and RWE Farms, LLC (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this action against the United States Department of Agriculture, Sonny Perdue, in his official capacity as Secretary of the United States Department of Agriculture and Richard Fordyce, in his official capacity as Administrator of the Farm Service Agency (collectively "USDA" or "Defendants"), and hereby allege as follows:

### NATURE OF THE CASE

1. This is a class action lawsuit brought by Plaintiff farmers, individually and on behalf of all other similarly situated farmers ("class members"), whose payments under USDA's Noninsured Crop Disaster Assistance Program ("NAP") have been arbitrarily, capriciously, willfully or negligently withheld in violation of the express and implied terms of

the NAP.

2. Through information and belief, from approximately April 2017 until approximately 2020, USDA has failed to adjudicate and timely pay valid NAP claims submitted by Plaintiffs and members of the putative class. No adequate or lawful reason has been given for USDA's refusal to timely adjudicate and pay these NAP claims.

3. On behalf of themselves and Class Members, Plaintiffs have standing to bring this lawsuit because they suffered actual damages as a direct and/or proximate result of USDA's wrongful actions and/or inaction.

4. USDA's wrongful actions and/or inaction and the resulting damage have placed Plaintiffs and Class Members at an imminent, immediate, and continuing risk of financial ruin, including the loss of their farming businesses. Even without such loss, Plaintiffs and Class Members are entitled to relief and recovery, including statutory damages as set forth herein.

5. USDA's wrongful actions and/or inaction also constitute common law negligence and negligence *per se*. Further, USDA's wrongful actions and/or inaction constitute a breach of contract, breach of the duty of good faith and fair dealing, and violations of Florida's Deceptive and Unfair Trade Practices Act.

6. Plaintiffs, on behalf of themselves and the Class Members, seek declaratory relief, actual damages, economic damages, statutory damages, nominal damages, exemplary damages, injunctive relief, attorneys' fees, litigation expenses and costs of suit.

## JURISDICTION AND VENUE

7. This action arises, at least partly, under federal law. The declaratory, injunctive and other relief requested by Plaintiffs is authorized by 5 U.S.C. §§ 702, 704 and 706, 28 U.S.C. §§ 2201-02, and this Court's general equitable powers.

8. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question) and § 1361 (federal officer).

9. Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. §1391(b)(2), (c)(1) and (e)(1) because Plaintiff Love resides in the Middle District of Alabama and a substantial part of the events or omissions giving rise to this action occurred in the Middle District of Alabama.

10. An actual, live controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

11. Plaintiffs seek fees, costs and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 or other authority.

## PARTIES

12. Plaintiff Chris Love ("Love") is an Alabama citizen residing in the Middle District of Alabama. Plaintiff Love is a farmer who applied for NAP, whose NAP application was accepted, who paid the applicable NAP premium, who suffered a NAP covered loss, who submitted a NAP claim during the relevant time period, and who has not received payment for his NAP claim.

13. Plaintiff RWE Farms, LLC ("RWE Farms") is a limited liability company organized under the laws of the State of Florida and with its principal place of business in Westville, Florida. Charles W. Ellenburg and Ralph Ellenburg, Jr., are members of RWE Farms, LLC. Plaintiff RWE Farms conducts farming operations and applied for NAP, the NAP application was accepted, and RWE Farms, LLC paid the applicable NAP premium, RWE Farms, LLC suffered a NAP covered loss, and submitted a NAP claim during the relevant time period, and has not received payment for its NAP claim.

14. As a direct and/or proximate result of the USDA's wrongful actions and/or

inaction, each Plaintiff has suffered economic damages relating to the USDA's failure to pay their NAP claims.

15. Defendant United States Department of Agriculture is a department in the U.S. government charged with administering the NAP.

16. Defendant Sonny Perdue ("Secretary") is sued in his official capacity as the Secretary of the USDA. The Secretary is the official ultimately responsible for the USDA's activities and policies and for compliance with the NAP.

17. Defendant Richard Fordyce ("Administrator") is sued in his official capacity as the Administrator of the Farm Service Agency of the USDA. The Administrator is legally responsible for administering the NAP.

## BACKGROUND FACTS

18. NAP was created by the USDA to provide crop loss assistance to farmers who are unable to obtain federal crop insurance for a particular crop. 7 U.S.C. § 7333. The Farm Service Agency ("FSA") issues regulations governing NAP. *See* 7 C.F.R. pt. 1437 (2019).[1] NAP operates within the general supervision of the Commodity Credit Corporation ("CCC") and is carried out by FSA. 7 C.F.R. § 1437.2(a) (2019). In addition to these regulations, FSA issues a NAP Handbook that further sets rules for the program. *See* Noninsured Crop Disaster Assistance Program for 2015 and Subsequent Years, 1-NAP (Revision 2) (Feb. 15, 2019).[2] On occasion, FSA also issues Notices that govern NAP. *See, e.g.*, FSA notice NAP-200, Reviewing Average Market Prices in NCT (June 11, 2019) (expires Dec. 1, 2019). In broad terms, NAP provides financial assistance to farmers who experience low yields, loss of

---

[1] The applications for coverage and acceptances occurred after 2015 and prior to the 2019 amendments and thus earlier version of this Code are applicable to the claims herein and Plaintiffs do not concede that the 2019 amendments apply.

[2] https://www.fsa.usda.gov/FSA/webapp?ome&subject=empl&topic=hbk

inventory, or prevented planting due to an eligible cause of loss, such as an adverse natural occurrence or damaging weather event.

19. In order to be eligible to participate in NAP, a farmer must be an owner, operator, landlord, tenant, or sharecropper and must have a valid share in the crop and also share in the risk of producing the crop. 7 C.F.R. § 718.2 (2019); NAP Handbook, page 3-1, para. 100.A (Feb. 15, 2019). Contract growers and legal entities can qualify as farmers under NAP. *See id.* Plaintiff Love and Plaintiff RWE Farms are farmers in that they both own a valid share in their crops and share in the risk of producing their crops.

20. NAP offers two primary types of coverage levels for crop losses: (1) the Basic 50/55 NAP plan; and (2) a buy-up coverage plan. The traditional NAP coverage is known as the basic 50/55 coverage plan. This plan provides payments based on the amount of loss the farmer suffers relative to either the farmer's expected yield, the expected value of the crop's inventory, the expected acreage to be planted, or the acreage intended for grazing. The farmer is then paid for any eligible losses at a predetermined rate. Under the basic 50/55 coverage plan, a farmer is eligible for NAP benefits for any losses that are more than 50 percent of the farmer's approved expected yield. The farmer is paid for those losses at a rate of 55 percent of the market price for the crop. Only if the farmer's loss is more than 50 percent of the approved yield will he or she be eligible for basic 50/55 coverage.

21. Following the enactment of the 2014 Farm Bill, NAP began offering additional, higher levels of coverage under the NAP buy-up coverage plan. Farmers could elect coverage for 50, 55, 60, or 65 percent of production at 100 percent of the average market price for the designated crop. Under the 2014 Farm Bill, this buy-up coverage was available for crop years 2015 through 2018. The 2018 Farm Bill re-authorized the availability of buy-up coverage under the same terms as outlined in the 2014 Farm Bill. Under the NAP buy-up

5

coverage plans, low yield losses must be more than 50 percent for 50/100 coverage, 45 percent for 55/100 coverage, 40 percent for 60/100 coverage, or 45 percent for 65/100 coverage.

22. Plaintiff Love applied for NAP coverage for seedless watermelons and collard greens in 2017 and Plaintiff RWE Farms applied for NAP coverage for cabbage in 2017 and watermelons, cantaloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers in 2018. Plaintiff Love and Plaintiff RWE Farms NAP applications were accepted. Both Plaintiff Love and RWE Farms paid the applicable NAP premiums.

23. In order for a crop loss to be covered by NAP, three types of eligibility rules apply. First, the specific crop must be eligible for assistance under NAP. Second, the crop loss must be caused by a NAP-eligible cause of loss. Third, the farmer must be eligible for NAP benefits. Plaintiffs meet each of these requirements and NAP accepted their applications thereby promising insurance.

24. In order for a specific crop to be eligible for NAP assistance, the crop must be a commercial crop or other agricultural commodity and it must be produced for food, fiber or as forage for animal consumption. Additionally, NAP coverage is only available if the crop is not eligible for catastrophic crop insurance coverage ("CCIC") or federal crop insurance coverage ("FCIC"). Plaintiff Love planted seedless watermelons and collard greens, commercial crops produced for food and thus eligible for NAP assistance. CCIC and FCIC were not available for Plaintiff Love's crop. Plaintiff RWE Farms planted cabbage in 2017 and watermelons, canteloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers in 2018. All commercial crop produced for food and thus eligible for NAP assistance. CCIC and FCIC were not available for Plaintiff RWE Farm's crop. Plaintiffs meet these requirements and NAP accepted their applications thereby promising insurance.

25. In order for a crop loss to be caused by a NAP-eligible loss, a covered crop

6

loss must occur during the coverage period and must result from damaging weather, adverse natural occurrences, and related conditions that result from either of those. 7 C.F.R. §1437.10 (2019); NAP Handbook, page 2-9, para. 51.B (Feb. 15, 2019). A natural disaster can be damaging weather, including, but not limited to, drought, hail, excessive moisture, freeze, tornado, hurricane, excessive wind, insufficient chill hours, or any combination of these events. An adverse natural occurrence can include an earthquake, flood, volcanic eruption, or any combination of these events. Finally, a "related condition" is a condition that must result from either damaging weather or adverse natural occurrences. For example, heat, insect infestation, disease, insufficient chill hours, or any combination of these events can be related conditions so long as they occurred because of an adverse natural occurrence or damaging weather.

26. Here, Plaintiff Love planted seedless watermelons and collard greens in 2017 and Plaintiff RWE Farms planted cabbage in 2017 and watermelons, cantaloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers in 2018. These crops planted by Plaintiffs are eligible for assistance under NAP.

27. The crop loss suffered by Plaintiff Love occurred on April 7, 2017 with regard to the collard greens and on June 23, 2017 with regard to the seedless watermelons and resulted from damaging weather, adverse natural occurrences, and related conditions, specifically excessive moisture in the form of precipitation with regard to the collard greens and excessive moisture in the form of precipitation and excessive heat with regard to the seedless watermelons.

28. The crop loss suffered by Plaintiff RWE Farms occurred in February 2018 with regard to the cabbage and in 2018 with regard to the watermelons, cantaloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers and resulted from damaging weather, adverse natural occurrences, and related conditions, specifically freezing weather with regard

7

to the cabbage in 2018 and excessive moisture with regard to the watermelons, cantaloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers in 2018. The crop losses suffered by Plaintiffs Love and RWE Farms constitute eligible causes of loss.

29. Finally, in order for a farmer to be eligible for NAP coverage, the farmer must have enrolled his, her or its crop in the NAP program and timely reported the crop loss. Plaintiff Love enrolled his collard greens and seedless watermelon crops in the NAP program on February 1, 2017 and timely reported his loss on April 7, 2017 with regard to the collard greens and on June 23, 2017 with regard to the seedless watermelons. Plaintiff RWE Farms enrolled its cabbage crop in August 2017 and its watermelons, cantaloupes, squash, zucchini, cucumbers, bell peppers, and jalapeño peppers in February 2018 and timely reported their losses. Therefore, Plaintiffs are eligible for NAP benefits.

30. Losses are not covered under NAP if they are caused by the farmer or could have been prevented by the farmer. Specifically excluded from NAP coverage are losses caused by, *inter alia*, the following: neglect or malfeasance; failure to reseed or replant if customary; failure to follow good farming practices which include failing to use cultural practices generally used for a crop to make normal progress toward maturity and produce an approved yield. Neither Plaintiff Love's losses nor Plaintiff RWE Farms' losses were caused by neglect or malfeasance; failure to reseed or replant if customary; failure to follow good farming practices or any other reason enumerated in 7 C.F.R. § 1437.10(d). Indeed, Plaintiffs followed good farming practices.

31. USDA failed to timely and properly adjudicate and pay Plaintiffs' NAP claims as their claims are still unpaid as of the filing of this lawsuit.

32. USDA's arbitrary, capricious, wrongful actions and/or inaction— to wit, failing to timely and properly adjudicate and pay Plaintiffs' and Class Members' NAP

claims— directly and/or proximately caused the damages suffered by Plaintiffs and Class Members. As a further direct and/or proximate result of USDA's arbitrary, capricious, wrongful actions and/or inaction, Plaintiffs and Class Members have suffered, and will continue to suffer, damages including, without limitation: (i) loss of revenue; (ii) the value of their time seeking adjudication and payment of their NAP claims; (iii) inability to fully conduct their ongoing farming operations and future farming operations.

## CLASS ACTION ALLEGATIONS

33. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this class action as a class action on behalf of themselves and the following Class of similarly situated individuals:

> The Nationwide Class:
>
> All persons located in the United States who applied for NAP, whose NAP application was accepted, who suffered a NAP covered loss, who submitted NAP claims, but who failed to receive NAP proceeds from six years prior to the filing of this Complaint to present.
>
> The Florida Subclass:
>
> All persons located in Florida who applied for NAP, whose NAP application was accepted, who suffered a NAP covered loss, who submitted NAP claims, but who failed to receive NAP proceeds from six years prior to the filing of this Complaint to present.
>
> The Alabama Subclass:
>
> All persons located in Alabama who applied for NAP, whose NAP application was accepted, who suffered a NAP covered loss, who submitted NAP claims, but who failed to receive NAP proceeds from six years prior to the filing of this Complaint to present.

Excluded from the Class are (i) any person or entity who is currently in bankruptcy or whose claims in this proceeding have been discharged in a bankruptcy proceeding, and (ii) the Court, Court personnel, and members of their immediate families.

34. The putative Class is, through information and belief, comprised of several thousand persons, perhaps tens of thousands, making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

35. The rights of each Class Member were violated in a virtually identical manner as a result of the USDA's arbitrary, capricious, willful, reckless, and/or negligent actions and/or inaction.

36. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, inter alia:

   a) Whether the USDA violated the provisions of NAP by failing to timely and properly pay Plaintiffs' and Class Members' NAP claims;

   b) Whether the USDA's decision to refuse to timely and properly pay Plaintiffs' and Class Members' NAP claims was arbitrary, capricious, willful, reckless, and/or negligent;

   c) Whether the USDA owed a duty to Plaintiffs and Class Members to timely and properly pay NAP claims;

   d) Whether the USDA breached its contractual duties under NAP by failing to timely and properly pay Plaintiffs' and Class Members' NAP claims; and

   e) Whether Plaintiffs and Class Members sustained damages as a result of the USDA's failure to timely and properly pay NAP claims.

37. Plaintiffs' claims are typical of Class Members' claims in that Plaintiffs' claims and Class Members' claims all arise from the USDA's failure to timely and properly pay NAP claims.

38. Plaintiffs and their counsel will fairly and adequately represent the interests of

Class Members. Plaintiffs have no interests antagonistic to, or in conflict with, Class Members' interests. Plaintiffs' lawyers are experienced litigators and intend to vigorously prosecute this action on behalf of Plaintiffs and Class Members.

39. A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and Class Members' claims. Plaintiffs and Class Members have been irreparably harmed as a result of the USDA's wrongful actions and/or inaction. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to the USDA's failure to timely and properly pay Plaintiffs' and Class Members' NAP claims.

40. Class certification, therefore, is appropriate pursuant to FED. R. CIV. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41. Class certification also is appropriate pursuant to FED. R. CIV. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the class as a whole.

42. The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.

## **CLAIMS FOR RELIEF/CAUSES OF ACTION**

### **COUNT I**
### **NEGLIGENCE/WANTONNESS**

43. The factual statements and allegations in the preceding paragraphs of this Complaint are incorporated by reference.

44. The USDA had a duty to exercise reasonable care in adjudicating Plaintiffs' and Class Members' NAP claims and to pay those claims in a timely manner.

45. The USDA negligently and/or wantonly violated its duty by failing to act reasonably with respect to timely adjudicating and paying Plaintiffs' and Class Members' NAP claims.

46. Alternatively, the USDA's conduct set forth herein was so reckless and so charged with indifference to the consequences of its failure to exercise reasonable care in timely adjudicating and paying Plaintiffs' and the Class Members' NAP claims as to amount to wantonness.

47. It was reasonably foreseeable that the USDA's failure to exercise reasonable care in timely adjudicating and paying Plaintiffs' and Class Members' NAP claims would result in financial damage to Plaintiffs and Class Members.

48. Plaintiffs and the Class Members were (and continue to be) damaged as a direct and/or proximate result of USDA's failure to timely adjudicate and pay their NAP claims in the form of, *inter alia*, (i) loss of revenue; (ii) the value of their time seeking adjudication and payment of their NAP claims; (iii) inability to fully conduct their ongoing farming operations and future farming operations; and (iv) anxiety and emotional distress— for which they are entitled to compensation.

49. The USDA's wrongful actions and/or inaction (as described above) constituted negligence and/or wantonness at common law.

## COUNT II
## NEGLIGENCE *PER SE*

50. The factual statements and allegations in the preceding paragraphs of this Complaint are incorporated by reference.

51. Federal statutory law and applicable regulations, including 7 U.S.C. § 7333 and regulations promulgated thereunder, as referenced above, set forth and otherwise establish

duties that were applicable to the USDA's conduct and with which the USDA was obligated to comply at all relevant times hereto.

52.    Defendant USDA violated these duties by failing to timely and properly adjudicate and pay NAP claims, which resulted in financial damage to Plaintiffs' and the Class Members.

53.    The purpose of 7 U.S.C. § 7333 and regulations promulgated thereunder, as referenced above is to clearly define and limit the circumstances in which the USDA can withhold NAP payments to farmers who submit valid and timely claims.

54.    The failure to timely adjudicate and pay the Plaintiffs' and Class Members' NAP claims is exactly the type of conduct that the legislation referenced above was intended to prohibit, and the harm at issue in this case that has been suffered by the Plaintiffs and Class Members is the type of harm the legislation referenced above was intended to prevent.

55.    Plaintiffs and Class Members fall within the class of persons 7 U.S.C. § 7333 and regulations promulgated thereunder, as referenced above were intended to protect.

56.    The harm suffered and that may be suffered in the future by the Plaintiffs and Class Members is the same type of harm 7 U.S.C. § 7333 and regulations promulgated thereunder, as referenced above were intended to guard against.

57.    As a direct and proximate result of the USDA's violation of 7 U.S.C. § 7333 and regulations promulgated thereunder, as referenced above, the Plaintiffs and Class Members were damaged in the form of, without limitation, loss of income, out-of-pocket expenses, anxiety, emotional distress, and other economic and noneconomic harm.

## COUNT III
## **BREACH OF EXPRESS OR IMPLIED CONTRACT**

58.    The factual statements and allegations in the preceding paragraphs of this

Complaint are incorporated herein by reference.

59. The USDA had a written agreement with the Plaintiffs and the Class Members as set forth in the NAP contracts entered into by the parties.

60. The NAP contracts provided to Plaintiffs and the Class Members constitutes an express contract. Plaintiffs and the Class Members fully discharged their obligations under the contract.

61. USDA breached its contracts with the Plaintiffs and the Class Members by failing to timely adjudicate and pay NAP claims.

62. As a direct and proximate result of Defendants' breach of its contracts with the Plaintiffs and the Class Members, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

## COUNT IV
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

63. The factual statements and allegations in the preceding paragraphs of this Complaint are incorporated herein by reference.

64. In every contract or agreement, including those NAP contracts at issue here, there is an implied promise of good faith and fair dealing, which means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract.

65. To the extent that the USDA contends that it had discretion to delay or deny NAP claim payments to Plaintiffs, the law reads a duty of good faith into Defendants' exercise of such discretion in order that the agreement should not be rendered illusory. The USDA did not act in good faith when it failed to timely adjudicate and pay Plaintiffs' NAP claims.

66. As a direct and proximate result of the USDA's breach of the implied duty of

good faith and fair dealing, the Plaintiffs and Class Members were damaged in an amount to be determined at trial.

## COUNT V
## DECLARATORY JUDGMENT

67. The factual statements and allegations in the preceding paragraphs of this Complaint are incorporated herein by reference.

68. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning the adjudication and payment of Plaintiffs' NAP claims. Plaintiffs desire and are entitled to a judicial declaration by this Court as to their rights and the obligations of the USDA related to the timely adjudication and payment of their NAP claims.

## COUNT VI
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(Fla. Stat. § 501.201, *et seq.*)
(On Behalf of Florida Subclass)

69. The factual statements and allegations in the preceding paragraphs of this Complaint are incorporated herein by reference.

70. Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, *et. seq.* ("FDUTPA"), prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* at § 501.204.

71. The stated purpose of FDUTPA is to protect consumers from "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* at § 501.202(2).

72. Plaintiff RWE Farms is a "consumer" as defined by FDUTPA. *Id.* at § 501.203(7).

73. USDA made misleading and/or false representations about the NAP program to farmers, including Plaintiff and the Class members. Specifically, USDA represented to Plaintiff and the Class members that eligible NAP claims would be timely adjudicated and paid by the USDA.

74. USDA had actual knowledge that said representations were false and/or misleading at the time it made said representations to the consuming public.

75. As a result of the deceptive and unfair practices described above, Plaintiff and the Class members enrolled in the NAP, paid premiums and suffered the losses at issue to their detriment.

## RELIEF REQUESTED

76. The preceding factual statements and allegations are incorporated herein by reference.

77. DAMAGES. As a direct and/or proximate result of the USDA's wrongful actions and/or inaction (as described above), Plaintiffs and Class Members suffered (and continue to suffer) damages in the form of, inter alia: (i) loss of revenue; (ii) the value of their time seeking adjudication and payment of their NAP claims; (iii) inability to fully conduct their ongoing farming operations and future farming operations; and (iv) anxiety and emotional distress— for which they are entitled to compensation. Plaintiffs and Class Members also are entitled to recover statutory damages and/or nominal damages. Plaintiffs' and Class Members' damages were foreseeable by the USDA.

78. EXEMPLARY DAMAGES. Plaintiffs and Class Members also are entitled to exemplary damages as punishment and to deter such wrongful conduct in the future.

79. INJUNCTIVE RELIEF. Plaintiffs and Class Members also are entitled to injunctive relief in the form of, without limitation, requiring USDA to, inter alia, promptly

adjudicate and pay all valid claims submitted under the NAP program.

80.   ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS. Plaintiffs and Class Members also are entitled to recover their attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to 28 U.S.C. § 2412 or other authority.

WHEREFORE, Plaintiffs, on behalf of themselves and Class Members, respectfully request that (i) the USDA be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiffs be designated the Class Representatives, and (iv) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, on behalf of themselves and Class Members, further request that upon final trial or hearing, judgment be awarded against USDA, in favor of Plaintiffs and the Class Members, for:

(i)   actual damages, consequential damages, statutory damages and/or nominal damages in an amount to be determined by the trier of fact;

(ii)   exemplary damages:

(iii)   injunctive relief as set forth above;

(iv)   pre- and post-judgment interest at the highest applicable legal rates;

(v)   attorneys' fees and litigation expenses incurred through trial and any appeals;

(vi)   costs of suit; and

(vii)   such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a trial by jury on all of the claims and causes of action so triable.

Respectfully submitted,

/s/ Dustin J. Fowler

Dustin J. Fowler
ASB- 8960-S69F
BUNTIN, ETHEREDGE & FOWLER, LLC
Attorney for Defendant
185 N. Oates Street
Dothan, Alabama 36301
Phone: (334) 793-3377
Facsimile: (334) 793-7756

Stephen T. Etheredge
ASB-8149-H69S
BUNTIN, ETHEREDGE & FOWLER, LLC
Attorney for Defendant
185 N. Oates Street
Dothan, Alabama 36301
Phone: (334) 793-3377
Facsimile: (334) 793-7756


Taylor C. Bartlett
ASB-2365-A51B
W. Lewis Garrison, Jr.
HENINGER GARRISON DAVIS LLC
2224 First Avenue North
Birmingham, AL 35203
Tel: (205) 326-3336
Fax: (205) 380-8085
Email: Taylor@hgdlawfirm.com
Email: Lewis@hgdlawfirm.com

James M. Terrell
ASB-0887-L73J
METHVIN, TERRELL, YANCEY,
STEPHENS & MILLER, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
Email: Jterrell@mtattorneys.com